IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID SMITH,

            Plaintiff,

    v.

CITY OF PHILADELPHIA, et al.,

            Defendants.

CIVIL ACTION
NO. 15-931

## OPINION

**Slomsky, J.**

**January 19, 2017**

## I.  INTRODUCTION

Plaintiff David Smith, proceeding pro se, brings this suit against Defendants for alleged

violations of his constitutional rights stemming from his incarceration at Curran-Fromhold

Correctional Facility ("CFCF") in Philadelphia, Pennsylvania.[1]  The following Defendants filed

a Motion to Dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6): the

City of Philadelphia, Former Mayor Michael Nutter, Major F. Abello, Commissioner Louis

Giorla, Warden Michele Farrell, Captain Murtha, Captain Vettar, Sergeant Molina, Correctional

---

[1]  Plaintiff originally instituted this action against twenty-eight Defendants.  Over the course of
this litigation, however, Plaintiff has voluntarily dismissed certain Defendants.  (See Doc. No.
33.)  Of the original twenty-eight, fourteen Defendants remain.  Four Defendants have not
joined in this Motion to Dismiss, but instead have filed an Answer to Plaintiff's Amended
Complaint (referred to as the "Answering Defendants").  (See Doc. No. 37.)  The Answering
Defendants are Correctional Officers Carter, Evans, Bradley, and Hammond.  (Id.)  The
remaining ten Defendants have filed the Motion to Dismiss (Doc. No. 36) and they are as
follows:  the City of Philadelphia, Former Mayor Michael Nutter, Major F. Abello,
Commissioner Louis Giorla, Warden Michele Farrell, Captain Murtha, Captain Vettar,
Sergeant Molina, Correctional Officer Edwards, and Correctional Officer Ginyard.

Officer Edwards, and Correctional Officer Ginyard (collectively, "Moving Defendants" or "Defendants"). (Doc. No. 36.) This Motion is presently before the Court for a decision.[2]

In the Amended Complaint, Plaintiff asserts that Defendants committed various constitutional violations, triggering civil liability under 42 U.S.C. § 1983 (commonly referred to as "Section 1983"). (Doc. No. 27.) He alleges that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments in three ways. (Id. at 7.) First, Plaintiff brings a Section 1983 claim alleging that the City of Philadelphia violated his Eighth Amendment and Fourteenth Amendment right to be free from excessive force. (Id. at 6-7.) Second, Plaintiff also raises a Section 1983 claim alleging that certain individuals violated his Eighth Amendment and Fourteenth Amendment right to be free from excessive force. In these claims, Plaintiff contends that the Moving Defendants should be liable for their failure to train the Answering Defendants in "protect[ing] inmates' rights to person[al] safety." (Id. at 5.) Third, Plaintiff alleges that Defendants Edwards and Ginyard violated his Eighth Amendment rights by failing to provide him with a meal. (Id.)

## II.   **BACKGROUND**[3]

David Smith alleges that he suffered federal civil rights violations during his incarceration at Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania.

---

[2] In reaching a decision, the Court has considered the Amended Complaint (Doc. No. 27), the Motion to Dismiss the Amended Complaint (Doc. No. 36), and Plaintiff's Response in Opposition (Doc. No. 49).

[3] When analyzing the sufficiency of pro se Complaints, courts in this Circuit must liberally construe the pleadings. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). The following facts are taken from the Amended Complaint and are accepted as true for purposes of the Motion to Dismiss.

(Doc. No. 27.) While being housed in one of CFCF's units,[4] Smith was under the supervision of several correctional officers. Officers Edwards, Ginyard, Carter, Evans, Bradley, and Hammond were among those responsible for monitoring him.[5] (Id.) On September 23, 2013, Correctional Officers Edwards and Ginyard failed to give Plaintiff his dinner. (Id. at 3.) Smith asked the officers why he was being denied his meal. (Id.) As a result of his questioning, Correctional Officers Carter, Evans, Bradley and Hammond were called to the scene to assist Edwards and Ginyard. (Id.) Smith was told to put his hands behind his back to be handcuffed, and he complied. (Id.) "At no time did . . . Plaintiff resist[]." (Id.) After he was handcuffed, one of the officers sprayed pepper spray on Plaintiff's face. (Id.) The officers then picked Smith up and slammed him onto "the day-room floor with great force." (Id.) "After being slammed to the floor, [Plaintiff] was spray[ed] again and again . . . each defendant sprayed . . . [Plaintiff] with their . . . pepper spray cans as Plaintiff layed [sic] face down and handcuffed." (Doc. No. 49 at ¶ 2.)

During this ordeal, Smith asked why he was being punished. (Doc. No. 27 at 4.) The officers responded that Smith was being punished for "questioning orders and seeking legal redress for the officer's [sic] action . . . of not giving him his meal." (Id.) Plaintiff sustained injuries to his face, hands, ribs, arms, and back from this incident. (Doc. No. 49 at ¶¶ 4-5.) Plaintiff "sustained a right fractured rib and a left upper arm fracture." (Id. at ¶ 4.) Plaintiff alleges that he needed surgery to alleviate the injuries he sustained to his hands, but did not

---

[4] CFCF consists of four buildings which house inmates. Each building has eight housing units, or pods. Each pod consists of thirty-two cells, which are organized around a common living and dining area. Although it is not clear from the Amended Complaint, it can be inferred that the events in this case occurred somewhere on a unit, and most likely in the common area where Plaintiff would not be secure in his cell.

[5] As noted, Correctional Officers Carter, Evans, Bradley, and Hammond have not joined in the Motion to Dismiss. Instead, they filed an Answer to the Amended Complaint. (Doc. No. 37.)

3

receive this medical care. (Doc. No. 27 at 4.) As a result, he "lost the use of his left middle finger." (Id.) He also is unable "to adequately lay on his right side." (Id.)

On April 27, 2016, Plaintiff, proceeding pro se, filed the Amended Complaint against Defendants. (Doc. No. 27.) On August 19, 2016, the Moving Defendants filed a Motion to Dismiss the Amended Complaint.[6] (Doc. No. 36.) Plaintiff filed a Response in Opposition to the Motion to Dismiss. (Doc. No. 49.) The Motion is now ripe for a decision.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 232 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no

---

[6] This litigation has faced repeated delays due to problems in serving the numerous Defendants named in the Amended Complaint, and in issues with Plaintiff receiving orders from the Court due to repeated address changes.

more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

**IV.   ANALYSIS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the Amended Complaint. (Doc. No. 36.) The Court will address each of Plaintiff's claims in turn.

### A. Plaintiff Has Not Plausibly Alleged a Monell Claim for Failure to Train

Plaintiff first alleges that the Moving Defendants failed to train the Answering Defendants in the proper procedures to protect inmates' safety. (Doc. No. 27 at 5.) In contrast, Defendants argue that Plaintiff has failed to identify a policy or custom of the City of

5

Philadelphia which led to the constitutional violation.  In the Motion to Dismiss, they also argue that the individual Defendants cannot be liable under a failure to train theory because Plaintiff has not alleged any personal involvement on the part of these Defendants in the wrongdoing.

### 1. Plaintiff Has Not Plausibly Alleged a Claim of Failure to Train Against the City of Philadelphia Because He Has Not Identified a Policy or Custom Which Caused the Alleged Violation

Plaintiff has alleged a Monell violation in the Amended Complaint.  He contends that the City of Philadelphia failed to train its employees on the proper ways to protect inmates at CFCF. (Doc. No. 27 at 5-6.)  Defendants argue to the contrary that Plaintiff has failed to identify a policy or custom that led to the constitutional violation.  For this reason, according to Defendants, Plaintiff has not pled sufficient facts to state a claim for relief that is plausible on its face.

A plaintiff seeking to hold a municipal entity liable under Section 1983 "must demonstrate that the violation of rights was caused by the municipality's policy or custom." [7]

---

[7] Municipal entities cannot be held responsible for the acts of employees under a theory of respondeat superior or vicarious liability.  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)).  Rather, a plaintiff who seeks to hold a municipal entity liable must demonstrate that the violation of constitutional rights was caused by the municipal entity's policy or custom. Thomas, 749 F.3d at 222.

Not all state action will rise to the level of a policy or custom.  Natale, 318 F.3d at 583.  A government policy is made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Defreitas v. Montgomery Cty. Corr. Facility, 525 F. App'x 170, 177 (3d Cir. 2013).  In contrast, a custom is "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law."  Id.

There are three situations where acts of an employee "may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983."  Natale, 318 F.3d at 584.  The first is where the appropriate entity promulgates a generally applicable statement of policy and the subsequent acts complained of is simply an implementation of that policy.  Id. (citing Board of Cty. Comm'rs

Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014).  The Third Circuit has explained that where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."  Id.  "The identified deficiency in a [municipal entity's] training program must be closely related to the ultimate injury;" or, in other words, "the deficiency in training [must have] actually caused" the constitutional violation.  See City of Canton v. Harris, 489 U.S. 378, 391 (1989) (holding that the municipality was deliberately indifferent in failing to train its employees on determining whether detainees needed medical care, and remanding the case to determine if municipal liability ought to be imposed).

Deliberate indifference is a stringent standard which requires a plaintiff to prove that "a municipal actor disregarded a known or obvious consequence of his action."[8]  Thomas, 749 F.3d at 223.  Usually, a plaintiff must demonstrate that there is a "pattern of similar constitutional violations by untrained employees" to establish deliberate indifference.  Id. (quoting Connick v. Thompson, 563 U.S. 61, 62 (2011)).

Furthermore, at the motion to dismiss stage, a plaintiff cannot simply state the legal standard for municipal liability under Section 1983 without pleading any supporting facts.  See

---

of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 417 (1997)).  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Id.  The third situation arises when "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  Id. (quoting Bryan Cty., 520 U.S. at 417-18).

[8] This stringent standard exists because in enacting § 1983, "Congress did not intend [for] municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."  Bryan Cty., 520 U.S. at 415.

Torres v. City of Allentown, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. Jun. 30, 2008).  In

Wood v. Williams, the Third Circuit explained that "simply paraphrasing" Section 1983 will not

satisfy the pleading requirements for a Monell claim.  568 F. App'x 100, 103-04 (3d Cir. 2014).

The Wood court noted that "the complaint did not allege facts showing any particular or specific

policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the

policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional

violations."  Id.  Similarly, in Thomas v. Cumberland Cty., the Third Circuit held that liability for

a Monell claim "cannot rest only on a showing that the employees could have been better trained

or that additional training was available that would have reduced the overall risk of constitutional

injury."  749 F.3d 217, 226 (3d Cir. 2014).

Here, Plaintiff's Monell claim against the City of Philadelphia arises under 42 U.S.C. §

1983 and relies on a failure to train theory.[9]  Plaintiff complains that:

> [T]he City of Philadelphia should be held liable because the beating was caused
> by a municipal policy, e.g. of failing adequately to train and supervise staff and
> investigate use of force complaints.  In doing so maintaining and/or tolerating a
> "code of silence" about staff misconduct, which in it's self [sic] support
> supervisory or municipal liability.

(Doc. No. 27 at 6.)

---

[9] In his Response in Opposition to the Motion to Dismiss (Doc. No. 49), Plaintiff relies upon
Campbell v. Gibb, No. 10-6584, 2012 WL 603204 (D.N.J. Feb. 21, 2012) to suggest that
Defendants' Motion to Dismiss be denied.  Campbell, however, can be distinguished from this
case.   In  Campbell, the plaintiff's amended complaint contained specific facts showing
excessive force was used against him and that supervisors failed to train those employees who
harmed the plaintiff while he was incarcerated.  Id. at *2.  For example, the plaintiff in
Campbell pled facts showing that supervisors had received previous complaints about the
employee who harmed Plaintiff, but failed to reprimand him.  Id.  Here, Plaintiff does not
allege any specific facts showing that the City of Philadelphia received previous complaints
about the correctional officers who filed the Motion to Dismiss.  Nor does Plaintiff allege any
facts detailing how the City of Philadelphia failed to train these Defendants.   Therefore,
Campbell is not persuasive.

Plaintiff has not alleged facts that show any policy or custom implemented by the City of Philadelphia which led to a constitutional deprivation.  He merely alleges conclusions, not plausible facts.  Further, the Amended Complaint fails to demonstrate how the training program for the correctional officers is inadequate.  <u>Torres</u>, 2008 WL 2600314, at *5.  The Amended Complaint also does not suggest how the City of Philadelphia was deliberately indifferent to Smith's rights.

In sum, Plaintiff has not made out a prima facie case for municipal liability against the City of Philadelphia.  Therefore, the Court will dismiss Plaintiff's <u>Monell</u> claim for failure to train against the City of Philadelphia.

### 2. Plaintiff Has Not Plausibly Alleged a Claim of Failure to Train Against Every Individual Defendant Because He Has Not Pled Facts Showing Each Individual's Personal Involvement in the Alleged Wrongdoing

Plaintiff alleges that Defendants Nutter, Abello, Giorla, Farrell, Murtha, Vettar, Molina, Edwards, and Ginyard should also be liable for their failure to supervise or train the Answering Defendants.  (Doc. No. 27 at 6.)  To the contrary, Defendants argue that Plaintiff cannot sustain a claim against them because Plaintiff has failed to plead facts which show that these Defendants were personally involved in any alleged wrongdoing.  (Doc. No. 36 at 7.)

A plaintiff cannot sustain a Section 1983 claim without pleading facts showing the existence of the defendant's personal involvement in the alleged wrongdoing.  <u>See Phelps v. Flowers</u>, 514 F. App'x 100, 102 (3d Cir. 2013) (writing that "liability under § 1983 cannot be premised on the theory of respondeat superior; instead, each individual must have personal involvement in the alleged wrongdoing"); <u>see also Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (establishing that "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of

respondeat superior."). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dept. of Corrs., 806 F.3d 210, 222 (3d Cir. 2015). In addition, although a court may infer that a defendant had "contemporaneous knowledge of wrongful conduct from the circumstances . . . the knowledge must be actual, not constructive." Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995)).

Here, Plaintiff relies upon Warren v. Vincent, No. 08-250, 2012 WL 566650 (W.D. Pa. Feb. 21, 2012) to support his failure to train claim against Defendants.[10]   (Doc. No. 49 at 5.) Plaintiff suggests that the district court's decision to deny the defendants' motion to dismiss in Warren should be followed here. (Doc. No. 49 at 5.)  That case, however, is distinguishable.  In Warren, the plaintiff identified multiple communications between himself and the defendants, who worked as the superintendent and sergeant, respectively, at the prison where the plaintiff was being housed.  Id. at *1.  The plaintiff specifically alleged that these communications reached the defendants, and that the defendants responded to his communications with notices that his concerns were unsubstantiated.[11]  The plaintiff also alleged that the superintendent of the

_____

[10] In the Response in Opposition to the Motion to Dismiss (Doc. No. 49), Plaintiff also relies upon Hamilton v. Lajoie, 660 F.Supp.2d 261 (D. Conn. 2009). Like Warren, Hamilton is distinguishable from the present case. The Hamilton court noted that Plaintiff identified specific acts or failures to act on the part of the warden in his complaint. Id. at 265. For instance, the plaintiff alleged that the warden "was responsible for policies that led to [Plaintiff's] injuries at the hands of the correctional officers, and also for the procedures followed by the medical staff following the incident." Id. Most importantly, the plaintiff in Hamilton identified the specific policies at issue and pled facts demonstrating the warden's involvement in creating the policies. Here, Plaintiff has failed to plead facts demonstrating the specific policies at issue as well as certain Defendants' personal involvement in any alleged wrongdoing. Therefore, Hamilton is not persuasive precedent.

[11] The Warren court characterized the plaintiff's amended complaint as follows:

prison responded to the plaintiff's complaints by saying "They broke your finger; you got what you deserved." Id.

Unlike the amended complaint in Warren, Plaintiff's Amended Complaint here is devoid of any facts showing that Defendants Nutter, Abello, Giorla, Farrell, Murtha, or Vettar had any personal involvement in or were even made aware of Plaintiff's complaints.   Therefore, the claims against Defendants Nutter, Abello, Giorla, Farrell, Murtha, and Vettar will be dismissed. With respect to Defendants Molina, Edwards, and Ginyard, however, Plaintiff has pled facts showing their personal involvement in the alleged wrongdoing.   Therefore, the Section 1983 claim against Defendants Molina, Edwards, and Ginyard with respect to the failure to train will not be dismissed.

> He identifies multiple communications to SCI Laurel administration and then-Superintendent Vincent, beginning in February, 2008, informing them of: (a) specific untoward, abusive and threatening conduct by specific guards; (b) his belief that his physical safety is in jeopardy (prior to and after sustaining a broken finger—allegedly purposefully inflicted by Defendant Cardenza while Plaintiff was pinned to the ground during a cell extraction—in May, 2008, for which requisite surgical treatment was delayed for approximately a month); and (c) his repeated requests that he be transferred to another facility for his protection in accordance with general policies and procedures. SCI Laurel has responded in writing to Plaintiff's complaints and communications, (a) asserting that his complaints regarding specific guard conduct are unsubstantiated/uncorroborated, his concerns for his safety are unmerited, and his diabetes and need for dialysis necessitates his continued incarceration at SCI Laurel because no other State correctional institution has dialysis equipment; and (b) admonishing him to direct his attention to conformance/compliance to improve the conditions of his incarceration. Plaintiff further alleges that Superintendent Vincent responded to his May, 2008 broken finger by saying "They broke your finger; you got what you deserved."

Id. (citations omitted).

11

Plaintiff does not allege any facts demonstrating Defendant Nutter's personal involvement or actual knowledge of the wrongdoing that occurred on September 23, 2013 at CFCF. The Amended Complaint states as follows:

> The Defendant, Michael Nutter, was the Mayor of Philadelphia, which is a municipality, which owns, operates, controls and promulgates policies governing PPS, including but not limited to policies affecting conditions of confinement for pretrial detainees and convicts housed within the system.[12]

(Doc. No. 27 at 2.) Plaintiff complains:

> The Ranking Officials Defendants has [sic] showed indifference by "knowing acquiescences [sic] in the unconstitutional behavior of the subordinates persistently violating a statutory duty to inquire about such behavior and to be responsible for preventing violent acts of excessive force, along with their failure to train and supervise. Such acquiescence in the continued existence of prison conditions which themselves are so injurious to the plaintiff that it amounted to a constitutional violation."

(Id. at 5.) Assuming the Ranking Officials Defendants includes Nutter, Plaintiff still does not allege any facts showing how Nutter had actual knowledge or was personally involved in the incident that occurred on September 23, 2013 at CFCF. Without any personal knowledge of the events, Nutter could not have acquiesced in any wrongdoing. Therefore, the claims against Nutter will be dismissed.

Similarly, Plaintiff does not allege any facts showing Defendant Abello's personal involvement in the wrongdoing. In fact, Abello is only mentioned once in the Amended Complaint: "The Defendant F. Abello is the Major of the above facility who is legally responsible for the operation of the prison and for the welfare of all inmates within said prison." (Id. at 2.) Assuming again that the Ranking Officials Defendants includes Abello, Plaintiff has not pled facts showing Abello's personal involvement in the events giving rise to this litigation. Without more facts demonstrating Abello's actual knowledge and acquiescence in the

---

[12] PPS is an acronym for the Philadelphia Prison System.

Answering Defendants' actions on September 23, 2013 when punishing Plaintiff, this claim must be dismissed.  Accordingly, the claims against Defendant Abello will be dismissed.

In reference to Commissioner Giorla and Warden Farrell, the Amended Complaint states: "The Commissioner Defendant who was aware of the risks of beatings but did nothing, the very same actions and inactions of the Warden Defendant Farrell who should be held liable for giving guards unsupervised authority to use force as a means of punishment of inmates."  (Id. at 6.) Although Plaintiff alleges that Giorla and Farrell gave correctional officers at CFCF "unsupervised authority" to monitor and punish inmates, this allegation does not demonstrate how Giorla and Farrell were personally involved in the September 23, 2013 incident involving Plaintiff.  It also does not demonstrate how Giorla and Farrell had actual knowledge of the September 23, 2013 incident or how they acquiesced in the wrongdoing.  Because knowledge of the incident must be "actual, not constructive," Plaintiff has failed to state a claim for relief against these Defendants.   Chavarriaga, 806 F.3d at 222.   Therefore, the claims against Defendants Giorla and Farrell will be dismissed.

As to Defendants Murtha and Vettar, the Amended Complaint states as follows: "The Defendants . . . Vetter [sic] and Murtha . . . should be held liable for abdicating their duty to supervise and monitor the use of excessive force to develop and persist."  (Doc. No. 27 at 6.) Plaintiff does not allege facts in the Amended Complaint showing how Murtha and Vettar were personally involved in the September 23, 2013 incident, nor does he pled facts showing that these Defendants had actual knowledge of the wrongdoing.  Therefore, the claims against Defendants Murtha and Vettar will be dismissed.

13

In regard to Defendants Molina, Edwards, and Ginyard, Plaintiff has pled facts showing their personal involvement in the alleged wrongdoing that occurred on September 23, 2013.  The Amended Complaint states as follows:

> The Defendants Sgt. Molina, N. Edwards; S. Ginyard; K. Carter; J. Evans; T. Hammond;  and Bradley. [sic]  Officers who should also be held liable where they acted as a unit, who were present during the beating which they participated [sic].

(Doc. No. 27 at 6.)  Plaintiff has pled facts here which show that Defendants Molina, Edwards, and Ginyard were present during the beating that occurred on September 23, 2013.   Plaintiff therefore has demonstrated that Molina, Edwards, and Ginyard had actual knowledge of the events giving rise to this litigation.  Therefore, the claims against Molina, Edwards, and Ginyard will not be dismissed.

Because Plaintiff has failed to allege any personal involvement in the alleged wrongdoing on the part of Defendants Nutter, Abello, Giorla, Farrell, Murtha, and Vettar, Plaintiff has not plausibly stated a claim for relief for their failure to train.  Therefore, the claims against these Defendants will be dismissed.  The claim against Defendants Molina, Edwards, and Ginyard, however, will remain.

### B. Plaintiff Has Not Plausibly Alleged a Claim for a Violation of the Eighth Amendment Regarding the Meal Deprivation

Plaintiff also alleges that Defendants Edwards and Ginyard violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with his meal on the evening of September 23, 2013.   (Id. at 3, 6.)  The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to "provide humane conditions of confinement to inmates."  Farmer v. Brennan, 511 U.S. 825, 831 (1994). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care."  Id. (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1994)).  Establishing a violation of

the Eighth Amendment requires a showing that the plaintiff was deprived of something "sufficiently serious" and that the officials acted with "deliberate indifference" to the inmate's health or safety.  Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009).

Here, Plaintiff argues that Edwards and Ginyard deprived him of his dinner on September 23, 2013.  Denial of a meal on a single occasion, however, is not sufficiently serious to rise to the level of a constitutional violation.  See Laurensau v. Romarowics, 528 F. App'x 136, 139-40 (3d Cir. 2013) (holding that an inmate's cell transfer which resulted in a modified meal plan for three days did not violate the Eighth Amendment prohibition against cruel and unusual punishment); see also Zanders v. Ferko, 439 F. App'x 158, 160 (3d Cir. 2011) (finding that the prison officials' withholding of three meals over two days did not result in an Eighth Amendment violation).  In addition, Plaintiff has not pled facts showing that Edwards and Ginyard acted with deliberate indifference in failing to provide his dinner.  For these reasons, Plaintiff's claim regarding Defendants' failure to provide his meal will be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 36) will be granted in part and denied in part. An appropriate Order follows.